NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOSHUA MYERS, *Appellant*,

*v.*

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an Agency,
*Appellee.*

No. 1 CA-UB 22-0111
FILED 6-13-2023

Appeal from the A.D.E.S. Appeals Board
No. U-1740165-001-B

**AFFIRMED**

COUNSEL

Hiser Joy, Phoenix
By Trevor Burggraff
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge David D. Weinzweig joined.

---

**C A M P B E L L**, Judge:

¶1        Myers appeals from the Arizona Department of Economic Security (ADES) Appeals Board's denial of his application for Pandemic Unemployment Assistance (PUA) benefits under the federal Coronavirus Aid, Relief, and Economic Security (CARES) Act of 2020. Because Myers failed to self-certify his eligibility for PUA benefits and later offered no evidence in support, we affirm.

**BACKGROUND**

¶2        In June 2020, Myers filed for PUA with ADES. He stated his last day of work was February 4 and that he was unemployed as a direct result of COVID-19. However, to satisfy PUA's self-certification requirement, Myers needed to answer "yes" to any one of a series of questions regarding the reasons for his unemployment. *See* 15 U.S.C. § 9021(a)(3)(A)(ii).[1] He answered "no" to each question and submitted his application. ADES then began processing Myers' claim.

¶3        Six months later, Myers "reopened" his June 2020 claim. Fourteen days later, on December 27, he filed an additional application. In each document, he self-certified that he was "to start working but was unable to due to the closure of the business caused by COVID-19." In both applications he listed February 2 as his last day of work and the date he planned to start new employment.

¶4        Within two weeks of receiving Myers' December 27 claim, ADES informed Myers via the online portal that "to be approved by PUA," he "need[ed] to upload . . . [a] typed document from [his] recent employer stating that [he] w[as] unable to work due to Covid 19."

¶5        Myers did so, providing an undated letter from his would-be employer (Employment Letter), who wrote:

---

[1]        Absent material revisions, we cite a statute's current version.

This is notification that, I had hired Joshua Myers . . . to work for my [cleaning] company, but on the 2nd of February, 2020, had to retra[ct] the offer of empl[o]yment, due to the recent Covid-19 pandemic. Sincerely [Signed].

¶6            In January of 2021, ADES denied Myers' June 2020 application because his unemployment was "not a direct result of the Pandemic." Myers appealed.

¶7            Over the summer, ADES found Myers ineligible once again on similar grounds regarding his December 27 application. Myers did not appeal this second disqualification.

¶8            ADES scheduled a telephonic hearing in September on his June 2020 application. The ALJ then elicited testimony from Myers about his work history and planned employment, as set forth in the Employment Letter.

¶9            Myers testified his last formal employment was in 2017. He explained that since then, he had done "odd jobs" like mowing lawns and fixing cars for "20 bucks here, 20 bucks there." Myers testified that he "stopped doing a[ny] job[s]" once he filed for PUA, because he was worried it would affect his eligibility. When asked why he decided "after several years of not working to go and work for a cleaner," Myers explained that "[H]e's a friend of mine and . . . I needed work."

¶10            When addressing the Employment Letter, the ALJ asked whether the employer's claim that he "had to retract the offer due to COVID," was because "COVID-19 was shutting things down in February of 2020[?]" Myers replied, "I don't know why . . . that's the wording [an ADES employee] . . . told me to have him use, so I just told him what to write, and he wrote it down, and signed it." Myers claimed "[e]verything was getting shut down" at the time. But he also testified—repeatedly—that he "couldn't remember" when he was supposed to start working for the cleaning company. He could recall only that it was sometime in February, and in documentation submitted to ADES, Myers used conflicting dates.

¶11            The ALJ asked Myers why his June 2020 application did not state that he "w[as] supposed to start work and that [he] w[as] unable to due to the closure of a business," unlike his request to reopen and his December 27 application. Myers answered, "I thought that I did put that down in there, [be]cause that's the whole reasons why I . . . filed."

¶12        At the conclusion of the hearing, the ALJ found Myers ineligible for PUA. The ALJ noted that Myers was last employed formally in 2017. The ALJ determined the Employment Letter was not credible. The ALJ then took judicial notice that (1) "Arizona did not have meaningful COVID-19 infections in February of 2020" and (2) "Governor Ducey did not present any executive orders regarding COVID-19 restrictions until March of 2020." Based on this information, the ALJ reasoned that Myers' unemployment could not have been as a direct result of COVID-19.

¶13        Myers appealed to the ADES Appeals Board. The Appeals Board affirmed the denial of eligibility, adopting the ALJ's findings of fact, reasoning, and conclusions of law. The Appeals Board cited the Employment Letter's lack of credibility. The Board observed that Myers' purported start date was "about six weeks" before Governor Ducey's first COVID-related executive order and that Myers waited "about five months" before applying for PUA benefits. Moreover, "the prospective Employer was guided by [Myers] regarding what to say," and Myers was himself parroting language "that a department employee advised him" to include in the letter. Myers appealed to this court.

¶14        We granted leave to appeal under A.R.S. § 41-1993(B), appointed pro bono counsel for Myers, and requested briefing on two issues. First, whether ADES "err[ed] by requiring credible documentation" supporting the lost employment opportunity for the weeks before December 27, 2020. Second, whether ADES "misappl[ied] the law by affirming Myers's disqualification because his unemployment occurred in February 2020," prior to imposition of COVID-19 restrictions in Arizona.

## DISCUSSION

¶15        "We defer to ADES's findings of fact but review de novo whether the Appeals Board properly applied the law to the facts." *Simmons v. Ariz. Dep't of Econ. Sec.*, 254 Ariz. 109, 111, ¶ 10 (App. 2022). If "any reasonable interpretation of the record and substantial evidence" supports the decision, we will affirm. *Id.*

¶16        In March 2020, Congress enacted the CARES Act, 15 U.S.C. §§ 9001–9141, which included a section for PUA benefits (15 U.S.C. § 9021). The program was federally funded, but administered by state unemployment benefit agencies. PUA was designed to provide limited, temporary benefits to individuals who were unemployed as a result of the COVID-19 pandemic but ineligible for regular unemployment benefits. 15 U.S.C. §§ 9021(a)(3)(A)(i), (c)(2), 9023(b)(1)–(3), 9025(a)(4).

¶17        Arizona made PUA benefit payments from January 27, 2020 until July 10, 2021. 15 U.S.C. § 9021(c)(1)(A); *see generally Unemployed Workers United v. Ducey*, 254 Ariz. 95 (App. 2022) (discussing Arizona's early exit from the federal pandemic unemployment compensation program).

¶18        Initially, claimants needed only to self-certify for eligibility, avowing they were "otherwise able to work and available for work . . . except [they were] unemployed" for one of 11 enumerated reasons, 15 U.S.C. § 9021(a)(3)(A), including that "the individual was scheduled to commence employment and does not have a job . . . as a direct result of the COVID-19 public health emergency," 15 U.S.C. § 9021(a)(3)(A)(ii)(I)(gg). Congress later amended the CARES Act, however, to require individuals to "provide[] documentation to substantiate employment or self-employment or *the planned commencement of employment*." 15 U.S.C. § 9021(a)(3)(A)(iii) (effective Dec. 27, 2020) (emphasis added).

## I.        Because Myers did not self-certify, ADES was authorized to request supporting documentation

¶19        We first address whether ADES erred by requesting additional documentation in support of Myers' June 2020 application.[2] When filling out ADES' online application, a claimant self-certified that they were eligible for PUA by answering "yes" to any of these questions:

1.  "Are you self-employed, a business owner, or a gig worker, or a worker for a religious organization whose unemployment was a direct result of COVID-19?"

2.  "Did you quit your job because of COVID-19?"

3.  "Are you laid off due to a lack of work after a business closure caused by COVID-19?"

---

[2]        ADES argues that because Myers "did not argue that [it] was not permitted to request or consider supporting documentation," we cannot address that issue on appeal. *See* A.R.S. § 41-1993(B) ("An issue may not be raised on appeal that has not been raised in the petition for review before the appeals board."). Not so. In Myers' petition for review, he argued the ALJ erred in finding the Employment Letter not credible and that he should have received PUA benefits because he provided all requested documentation. To address this argument, we necessarily consider whether ADES could request and rely on supporting documentation.

4.  "Has your employer reduced your hours due to COVID-19?"

5.  "Were you to start working but was unable to due to the closure of the business caused by COVID-19?"

*See* 15 U.S.C. § 9021(a)(3)(A)(ii); *see also* U.S. Dep't of Lab., Emp. & Training Admin., Unemployment Insurance Program Letter No. 16-20 (UIPL 16-20), Change 1, at I-7 (Apr. 27, 2020).

¶20        But Myers answered "no" to each self-certification question. Still, Myers argues his application was complete because he signed it, answered "yes" to being "unemployed as a direct result of a pandemic or major disaster," and then marked "COVID-19" as the major disaster. However, a completed self-certification form was to include "[t]he identification of the applicable COVID-19 related reason(s)." UIPL 16-20, Change 1, at I-7. Though Myers later answered "yes" to one of the listed questions, thereby completing the self-certification form when "reopening" his June 2020 claim, ADES was not required to consider this a completed self-certification because the new information conflicted with that of the original claim. *See* U.S. Dep't of Lab., UIPL 16-20, Change 4, at I-29 (Jan. 8, 2021) ("States are not required to take a new PUA application for an individual with an existing PUA claim, whether the individual is in active claim filing status or not . . . ."). Absent appropriate self-certification in the initial application, Myers was not a "covered individual" entitled to PUA benefits, and ADES could seek to clarify the discrepancy by requesting additional information. *See* 15 U.S.C. § 9021(a)(3)(A)(ii)(I); *see also* U.S. Dep't of Lab., UIPL 16-20, Attachment 1, at I-2 (Apr. 5, 2020) (summarizing definition as requiring, among other things, an individual to "provide[] self-certification that [he] meets the requirements").

¶21        Here, the facts bely Myers' claim that ADES was "unnecessarily complicat[ing] the process to justify" impermissible fact-finding. The June 2020 application lacked self-certification and included information that conflicted with ADES records. Myers listed February 4, 2020 as his last day of work, when ADES records showed he was last employed in 2017. Nonetheless, Myers insists ADES could not request documentation under any circumstances. We disagree. Subject to its agreement with the Department of Labor, ADES had an affirmative duty "to take reasonable and customary precautions to deter and detect fraud." UIPL 16-20, Attachment 1, at I-7; *see also* 15 U.S.C. § 9021(f) (requiring states to have "adequate system[s] for administering such assistance").

¶22          Myers failed to complete the self-certification to support his application. This necessarily required the department to verify the legitimacy of his claim by cross-referencing internal records and seeking clarification from the applicant. By requesting supporting documentation to determine his eligibility, ADES acted within its discretion. Indeed, based on the deficient self-certification, ADES could have simply disqualified him from receiving PUA benefits out of hand. *See* UIPL 16-20, Change 1, at I-7.

¶23          ADES did not err in requiring Myers to substantiate his claim to PUA benefits because he failed to satisfy the threshold requirement of self-certification, provided information that contradicted ADES' internal records, and provided contradictory information when attempting to reopen his initial claim.[3] Therefore, ADES was authorized to request documentation to verify his eligibility and the ALJ did not err in considering the Employment Letter and weighing its credibility.

## II.     The ALJ and Appeals Board did not err in finding Myers did not qualify for PUA benefits

¶24          Last, we consider the merits of Myers' claim that ADES erroneously denied him benefits because he applied "to[o] early." PUA became available in January of 2020—but only to those who met the eligibility requirements. 15 U.S.C. § 9021(c)(1)(A)(i). Myers is only eligible for PUA benefits if he "was scheduled to commence employment and does not have a job . . . *as a direct result of* the COVID-19 public health emergency." *See* 15 U.S.C. § 9021(a)(3)(A)(ii)(I)(gg) (emphasis added). More specifically, Myers' unemployment must have been an "immediate result" of the COVID-19 pandemic and not "the result of a longer chain of events." *See* 15 U.S.C. § 9021(h) (applying 20 C.F.R. 625 to PUA "[e]xcept as otherwise provided . . . or to the extent there is a conflict"); *see also* UIPL 16-20, Attachment 1, at I-7 (citing 20 C.F.R. 625.5(c) for definition of "direct result").

---

[3]     Given this conclusion, it does not matter whether the ALJ and Appeals Board relied on the letter as support for Myers' "planned commencement of employment" or as the reason for his unemployment. *See Simmons*, 254 Ariz. at 112, ¶ 15 n.1 (noting the CARES Act "still only require[d] an individual to self-certify the reason for the unemployment"); *see also* 15 U.S.C. § 9021(a)(3)(A)(ii), (iii) (effective Dec. 27, 2020).

¶25        Simply being unemployed in February of 2020 is not sufficient to show an individual is entitled to PUA benefits. Reasoning that "there were no restrictions preventing employment in February of 2020," the ALJ concluded that Myers' unemployment was not the direct result of the COVID-19 pandemic.

¶26        Myers testified that he was scheduled to start work at his friend's cleaning company, which "works with banks" to clean out vacant houses to "get[ them] ready for resale." According to Myers, although the cleaning company remained open, his friend could not "go to some – to all – a lot of the places because the pandemic thing." *See* 15 U.S.C. § 9021(3)(A)(ii)(I)(gg).

¶27        But there were no government shutdowns or social distancing requirements in Arizona in February 2020. The ALJ took judicial notice that Governor Ducey did not issue any executive orders addressing COVID-19 until March. *See* Exec. Order No. 2020-07 (Mar. 11, 2020) (declaring COVID-19 a public health emergency); Exec. Order No. 2020-09 (Mar. 19, 2020) (closing certain businesses "in Arizona counties with confirmed COVID-19 cases"); Exec. Order No. 2020-12 (Mar. 23, 2020) (identifying banks and "[c]ritical trades," including cleaners, as "essential services," which were not subject to closure).

¶28        The ALJ had discretion to find the Employment Letter not credible. *See Holding v. Indus. Comm'n of Ariz.*, 139 Ariz. 548, 551 (App. 1984) (noting ALJ "may reject [evidence] if it is self-contradictory [or] inconsistent with other evidence"). Here, the Employment Letter recites only that Myers' job offer for February 2, 2020, was retracted "due to the recent Covid-19 pandemic." The Employment Letter provided no explanation regarding how the pandemic affected the employer's ability to hire Myers. And Myers himself testified that "I just told him what to write"—including the start date—"and he wrote it down, and signed it."

¶29        ADES did not "ignor[e]" PUA's eligibility period—it contextualized Myers' claim in light of the employment offer, the early stages of the COVID-19 pandemic, and the causal link between COVID-19 and the offer's recission. Substantial evidence supports the ALJ's conclusion that "there were no restrictions preventing employment in February of 2020," and therefore, Myers' unemployment "was not the direct result of one of the COVID-19 related reasons." The ALJ and Appeals Board did not err in finding Myers ineligible for PUA.

## CONCLUSION

¶30        For the reasons above, we affirm.

